UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**BOSTON CEI, LLC,**                                  Chapter 11
    Debtor                                            Case No. 10-16502-JNF
~~~~~~~~~~~~~~~~~~~~~~~~~~~

**BOSTON CEI, LLC,**
    Plaintiff
v.                                                   Adv. P. No. 10-1327
**VERTEC CORPORATION,**
    Defendant

~~~~~~~~~~~~~~~~~~~~~~~~~~~

**MEMORANDUM**

**I. INTRODUCTION**

    The matter before the Court is the Emergency Motion to Vacate Default Judgment filed by the Defendant, Vertec Corporation ("Vertec"). The Plaintiff, Boston CEI, LLC (the "Debtor"), opposes the Motion. The Court heard the matter on December 29, 2011 and directed the parties to file Supplemental Affidavits by January 12, 2012. The parties complied with the Court's order.

    The material facts necessary to decide the issue do not appear to be in dispute, and

1

neither party requested an evidentiary hearing. The Court now makes its findings of fact and rulings of law in accordance with Fed. R. Bankr. P. 7052.

## II. BACKGROUND

The Debtor, a specialty contracting company founded in 1999, filed a voluntary Chapter 11 petition on June 15, 2010. On August 26, 2010, it filed an "Expedited Motion for an Order Directing Contractors/Vendors to Pay Amounts Due and Owing in Accordance with Outstanding Invoices" (the "Motion for Order"), in which it requested the Court to compel Vertec and others to pay outstanding invoices. On September 8, 2010, Vertec, appearing *pro se,* filed an Objection to the Motion for Order, signed by its Secretary Treasurer, William C. Faradie, III ("Mr. Faradie"). In its Objection, it disputed the amounts the Debtor claimed it owed. Additionally, and not withstanding MLBR 9010–1(c), Vertec also attended the hearing through Mr. Faradie.[1]

The Court heard the Debtor's Motion for Order and the Objections filed by Vertec and others on September 5, 2010 and determined that, if the objecting parties and the Debtor were unable to settle their disputes within 30 days, then the Debtor was to commence adversary proceedings to recover the amounts it claimed as due and owing.

The Debtor did not resolve its differences with Vertec and, on November 9, 2010, it

---

[1] MLBR 9010-1(c) provides:

A corporation, partnership or trust, by and through an officer or agent, or a person authorized by a power of attorney, may file a proof of claim or an application for payment of unclaimed monies due such entity, and may be heard on objections to claims or applications for payment. Otherwise, such entities shall appear only through counsel.

2

filed a three-count Complaint against Vertec, seeking damages and turnover of $233,100.56 for alleged breaches of contract and quantum meruit. Despite proper service of the summons and Complaint, Vertec failed to file an Answer, and, on December 13, 2010, the Clerk entered a default. The Debtor did not move for the entry of a default judgment at that time.

On June 15, 2011, the Court issued a Notice of Inactivity in which it advised the parties that the adversary proceeding would be dismissed on or after July 15, 2011 unless a party filed a motion in opposition to dismissal or there was further activity in the proceeding. In response, the Debtor filed a Motion for Default Judgment on July 14, 2011, supported by the Affidavit of Peter Banks, who identified himself as the owner of the Debtor. On December 7, 2011, the Court entered an order on the Motion for a Default Judgment, and entered judgment in favor of the Debtor and against Vertec in the sum of $232,797.36. On December 16, 2011, the Debtor requested a writ of execution. Five days later Vertec filed its Emergency Motion to Vacate Default Judgment together with a proposed Answer to the Complaint.

Vertec has not filed a proof of claim in the Debtor's bankruptcy case. The deadline for doing so has passed. Additionally, the Court, on December 15, 2011, approved the Debtor's Second Amended Joint Plan of Reorganization by Debtors and Debtors-in-Possession,[2] subject to the submission of a proposed form of confirmation order and the

---

[2] The other joint debtors are IAG, LLC (Case No. 10-22021-JNF) and Norfolk CEI, LLC (Case No. 10-22025-JNF).

allowance of a "Motion to Determine Proposed Modification to be Non-Material and Non-Adverse and Approve Non-Material, Non-Adverse Modification to Plan," which was filed on January 23, 2012.

### III. POSITIONS OF THE PARTIES

A. <u>The Motion to Vacate Default Judgment</u>

Vertec supported its Motion to Vacate Default Judgment with the Affidavits of Mr. Faradie, Harvey B. Heafitz, Esq. ("Attorney Heafitz"), Vertec's present counsel, and Albert A. Lochiatto, Esq. ("Attorney Lochiatto"), Vertec's counsel for over 25 years. Vertec filed Attorney Lochiatto's Affidavit after the December 29, 2011 hearing.

Mr. Faradie attached 30 exhibits to his Affidavit pertaining to Vertec's defenses to the Debtor's three-count Complaint. Vertec, through Mr. Faradie, also averred that it consulted with Attorney Lochiatto about responding to the Debtor's Motion for Order. According to Mr. Faradie, Attorney Lochiatto drafted an Objection and gave it to Vertec, advising it to sign the Objection *pro se* and to attend the hearing without him, despite having been paid for his services in advance. Mr. Faradie represented that he followed Attorney Lociatto's advice, filed the Objection and attended the hearing. Additionally, he stated that he reported to Attorney Lochiatto about what transpired at the hearing.

Following the commencement of the adversary proceeding and receipt of the summons and Complaint, Vertec forwarded the summons and complaint to Attorney Lochiatto by e-mail. Vertec, through Mr. Faradie, communicated with Attorney Lochiatto by sending him an e-mail entitled "RE: CEI Boston," in which he stated: "Al, I think we

better review all of this together. We have to respond before 12/10/10. We need to fight them on this. This claim is bogus." According to Vertec, on December 7, 2010, Mr. Faradie sent another e-mail to Attorney Lochiatto entitled "CEI Boston" in which he stated: "Al, Did you get to the response yet. [sic] We want [t]o make sure they understand there are more ongoing costs with Heritage too."

Attorney Lochiatto failed to file any responsive pleadings on Vertec's behalf, and as noted above, on December 13, 2010, the clerk entered a default. After receiving further papers relating to the main bankruptcy case, on January 31, 2011, Mr. Faradie sent an e-mail to Attorney Lochiatto, entitled "CEI Paperwork," in which he stated: "Hi Al, Can you please call me? What does this paperwork mean?" According to Mr. Faradie, Attorney Lochiatto did not advise Vertec that it had been defaulted, and he did not advise it that no responsive pleadings were filed. Following its receipt of the Debtor's Motion for Default Judgment on July 18, 2011, Vertec again contacted Attorney Lochiatto to inquire as to how to respond. Additionally, Vertec instructed Attorney Lochiatto to contact Debtor's counsel and provided him with contact information for Debtor's counsel.

On August 18, 2011, prior to the entry of the default judgment, Attorney Lochiatto sent a form of Answer to Vertec by e-mail and advised Mr. Faradie to sign and submit the Answer *pro se.* Following his advice, Mr. Faradie, on August 18, 2011, signed the Answer and sent it to Debtor's counsel; he did not file it with the Court. Attorney Heafitz attested that he learned of the Debtor's bankruptcy case and the adversary proceeding on December 19, 2011 and that the Debtor received a copy of Vertec's Answer, which was never filed

5

with the Court.

As noted above, Attorney Lochiatto submitted an Affidavit after the Court's December 29, 2011 hearing in which he admitted to professional malpractice. He stated, in pertinent part, the following:

> I am an attorney in good standing admitted to practice in the State of Connecticut. I am also admitted to practice in Massachusetts, though I have been designated as "retired" in Massachusetts for many years.
>
> I do litigate but do not regularly appear in court as most cases I am involved in settle.
>
> I have extremely limited Federal District Court experience, the last time many years ago in Connecticut, the only jurisdiction where I currently practice.
>
> I have never been involved in a bankruptcy case before.
>
> I have acted as corporate counsel for Defendant, Vertec Corporation, for over 25 years. In that capacity, I am normally asked to review contracts and provide corporate and business related advice. I do not generally perform litigation services for Vertec.
>
> ***
>
> Vertec provided me with a copy of the Adversarial Proceeding Complaint filed in this matter promptly after Vertec was served with the Complaint.
>
> When I received the Complaint from Vertec, I asked Vertec to provide me backup documentation and materials that I felt I would need to prepare an answer to the Complaint.
>
> Vertec also provided me with prompt notice of the Default when Vertec received notice of same.
>
> I believe that I followed up with Vertec after receiving notice of the Default and requested that Vertec provide me with final information on all projects in dispute so that I could prepare an Answer for their use.

Vertec provided me with prompt notice of CEI's Motion for Default Judgment.

I provided Vertec with an Answer to the Complaint in August, 2011, after receiving from Vertec all of the records that I believed were needed to respond to the claims advanced by CEI in the Complaint.

During the time between when I was notified of the Complaint and when I prepared the Answer, information came at various times when I would meet with Vertec at their office. The last information, concerning the Heritage Project, was provided just before I prepared the final draft of the Answer for Vertec's use in August, 2011. The Heritage information was incomplete until that time, but I now realize that an answer should have been provided before all of that information was available.

I understand that the delay in the delivery of the information for the Heritage Project was occasioned by the fact that the Heritage Project was ongoing (I am informed that CEI abandoned the Project before completion) and Vertec was not able to provide complete information on its position (including all defenses, backcharges and offsets against the CEI account) until completion.
. . . .

*I believed I could wait until I had the final information on the Heritage Project and that the default would be automatically vacated if the answer was filed, before a final judgment.*

I now realize that I should have instructed Vertec to file its Answer sooner, but thought I could wait until I had all the figures on the Heritage project because it seemed to me that to proceed before sorting out the Heritage figures would not be a productive use of anyone's time and energy.

At the time I provided Vertec with the Answer for its use, I instructed Vertec to file the answer directly with [the] clerk of the court by mail and to CEI's Attorney.

I am informed that Vertec inadvertently did not file its Answer in Court, but only served same on opposing Counsel.

Opposing Counsel never contacted me regarding the Answer which Vertec served upon them in August of 2011.

7

> I did not file an appearance in this case (the Adversarial Proceeding) at any time.
>
> *I do not practice in bankruptcy or federal court and did not familiarize myself with the rules on filing the answer. Where Vertec was allowed to file their Objection pro se in September 2010, I believed they could continue to represent themselves in this matter in a similar, informal manner.*
>
> I believed that there was a reasonable chance that continued negotiations would ensue after Vertec filed its Answer and that Vertec could handle those negotiations (or involve me as needed), but that I did not need to appear in the Adversarial Proceeding.
>
> I incorrectly believed filing the answer prior to the judgment of default would automatically vacate the default.
>
> I based this on my understanding of what the effect of the filing of the Answer would be on Connecticut Practice Book sec. 17-20, which provides in relevant part that "If the defaulted party files an appearance in the action prior to the entry of judgment after default, the default shall automatically be set aside by operation of law."(Emphasis added).
>
> *I did not refer Vertec to a litigator or bankruptcy attorney to file the answer for them. I believed that they could file the Answer "pro se" and then assess whether the matter could be settled. This understanding comes in part from the fact, which I now know to be incorrect, that Vertec could represent itself informally in connection with the Adversarial Proceeding in the same manner as Vertec did in connection with the regular bankruptcy matter in which Vertec filed an Objection in 2010.*

(emphasis supplied).

Vertec relies upon Fed. R. Bankr. P. 7055, which makes Fed. R. Civ. P. 55(c) and Fed. R. Civ. P. 60(b) applicable to motions to vacate default judgments. It relies upon Fed. R. Bankr. P. 60(b)(1) and (6). It maintains that it has meritorious defenses to the Debtor's claims, that it opposed the Debtor's Claims, and was prejudiced by the failures and neglect of Attorney Lochiatto. In particular, it maintains that Attorney Lochiatto's negligence constitutes an exceptional circumstance, particularly as he had been paid to render services.

8

It also notes that the Debtor's attorney had notice that Vertec was attempting to oppose the Debtor's claims. It adds that it has meritorious defenses to the Debtor's claims, for which it submitted Mr. Faradie's Affidavit, as well as a detailed explication of those defenses in its Memorandum. Vertec also observes that it filed its Emergency Motion to Vacate Default Judgment within 14 days of the date of the entry of the default judgment, adding that the Debtor will not be prejudiced by the relief requested.

### B. The Debtor's Opposition

The Debtor opposed Vertec's Motion to Vacate Default Judgment. It supported its Opposition with the Affidavits of its counsel, Michael K. Lane, Esq. ("Attorney Lane") and John M. McAuliffe, Esq. Attorney Lane represented that he received what he considered a deficient Answer and so advised Vertec in a voice message on its answering machine. According to Attorney Lane, Vertec never responded to his telephone message.

The Debtor maintains that Vertec's neglect was calculated and inexcusable. Additionally, it maintains that its Emergency Motion to Vacate Default Judgment fails to set forth sufficient legal or factual basis for relief. Criticizing Vertec's reliance on Fed. R. Civ. P. 60(b)(6) rather than 60(b)(1), it asserts that exceptional circumstances do not exist, particularly as, in its view, "Vertec provides selective and one-sided attorney-client disclosures while asking the Court to excuse its 13 months of intentional neglect."

The Court notes that Attorney Lochiatto's Affidavit which was filed after the hearing and the filing of the Debtor's Memorandum undermines the Debtor's argument as to the attorney-client privilege. Attorney Lochiatto's advice, if it can be called advice, was grossly

9

negligent.

Additionally, the Debtor disputes the existence of meritorious defenses to its Complaint and suggests that Vertec is using the passage of time "to advance defenses incapable of verification and [to] reassert defenses previously deemed meritless."

**IV. DISCUSSION**

    A. <u>Applicable Law</u>

Fed. R. Civ. P. 55(c), made applicable to this proceeding by Fed. R. Bankr. P. 7055, sets forth the standard for setting aside the entry of defaults: the movant must establish "good cause." The standard for setting aside the entry of a default judgment is governed by Fed. R. Civ. P. 60(b). Fed. R. Bankr. P. 9024 of the Federal Rules of Bankruptcy Procedure makes Fed.R.Civ.P. 60 applicable to cases under the Bankruptcy Code, subject to certain exceptions not relevant to the instant adversary proceeding. Rule 60(b) provides in pertinent part:

> (b) On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:
>
>     (1) mistake, inadvertence, surprise, or excusable neglect; . . .
>
>     (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). Both Vertec and the Debtor recognize that Rule 60(b) is applicable to the instant matter pursuant to Fed. R. Civ. P. 55(c). Vertec, as the defaulted party has the burden of proving that the default judgment should be set aside. <u>Malloy v. Wallace ((In re</u>

Wallace), 298 B.R. 435, 440 (B.A.P. 10th Cir.2003), *aff'd*, 99 Fed. App'x 870 (10th Cir. 2004)(citing Nikwei v. Ross School of Aviation, Inc., 822 F.2d 939, 941 (10th Cir.1987)).

This Court recently considered a motion to vacate a default judgment in Braunstein v. Sanders (In re Muhammad), No. 10-1058, 2011 WL 1587125 (Bankr. D. Mass. April 22, 2011). In that case, this Court stated:

> This Court recently examined the contours of Rule 60(b) in RBSF, LLC v. Franklin (In re Franklin), 445 B.R. 34 (Bankr. D. Mass. 2011). This Court observed that the United States Court of Appeals for the First Circuit, in the context of a motion to vacate a default judgment, stated that Rule 60(b)(6), "is a catch-all provision" and "[t]he decision to grant or deny such relief is inherently equitable in nature." 2011 WL 917744 at *8 (citing Ungar v. The Palestine Liberation Organization, 599 F.3d 79, 83 (1st Cir.2010); United States v. One Star Class Sloop Sailboat, 458 F.3d 16, 25–26 & n.10 (1st Cir.2006); and Teamsters, Chauffeurs, Warehousemen & Helpers Union, Local No. 59 v. Superline Transp. Co., Inc., 953 F.2d 17, 19–20 (1st Cir.1992)). According to the First Circuit, however, "it is the invariable rule, and thus, the rule in this circuit, that a litigant, as a precondition to relief under Rule 60(b), must give the trial court reason to believe that vacating the judgment will not be an empty exercise." Teamsters, 953 F.2d at 20.
>
> Additionally,
>
>> A variety of factors can help an inquiring court to strike the requisite balance. Such factors include the timing of the request for relief, the extent of any prejudice to the opposing party, the existence or non-existence of meritorious claims of defense, and the presence or absence of exceptional circumstances. This compendium is neither exclusive nor rigidly applied. Id. Rather, the listed factors are incorporated into a holistic appraisal of the circumstances. In a particular case, that appraisal may-or may not-justify the extraordinary remedy of vacatur.
>
> Ungar, 599 F.3d at 83–84 (footnote omitted, citations omitted). Thus, the contours of a motion for reconsideration, determination of which is reviewed for abuse of discretion, is "peculiarly malleable" and "hard-and-fast rules

11

generally are not compatible with Rule 60(b)(6) determinations." Id. at 84 (citations omitted).

Muhammad, 2011 WL 1587125 at *3-4.

  B. Analysis

The Court finds, based upon the Affidavits presented, that Vertec has sustained its burden of establishing both excusable neglect and exceptional circumstances, and the Court shall enter an order vacating the default judgment and the default. In short, the Court is convinced that vacating the default judgment and the default will not be an empty exercise. Vertec relied upon the egregious advice of its counsel, who represented it for over 25 years, to appear *pro se* in the defense of the adversary proceeding commenced by the Debtor, in which the Debtor was seeking damages well in excess of $200,000. Attorney Lochiatto, to his credit, "fell on his sword" and admitted that he was completely unaware of how to practice in the federal courts and in the bankruptcy court in particular and that he had no knowledge of the Local Rules of the Massachusetts bankruptcy court, including MLBR 9010-1(c). Attorney Lochiatto did not advise his long time client to engage a litigator or bankruptcy specialist to defend its interests, and, as a result, not only did Vertec fail to file a proper response to the Complaint, it failed to file a proof of claim. Additionally, Attorney Lochiatto relied upon Connecticut practice with respect to the removal of defaults and, thus, lulled Vertec into a course of conduct that has caused both it and the Debtor to incur needless legal fees.

Although the Debtor suggests that Vertec was aware that the Answer it sent to the

12

Debtor, but did not file with the Court, was inadequate and that Vertec's defenses lack merit despite the volume of evidentiary materials submitted as exhibits to Mr. Faradie's Affidavit, this Court cannot draw that conclusion that Vertec's defenses lack merit at this point in time.  Unlike the situation in the <u>Muhammad</u> case, Vertec filed Affidavits in support of its Motion to Vacate Default Judgment and adduced evidence of defenses to the claims asserted by the Debtor.  In view of the magnitude of the default judgment, Vertec is justified in attempting to limit its exposure for the Debtor's breach of contract and quantum meruit claims, which cannot be decided now in conjunction with the Motion to Vacate Default Judgment.

The Court, however, conditions the relief it affords Vertec upon the payment of the Debtor's legal fees incurred in this adversary proceeding from July 14, 2011, the date the Debtor moved for the entry of a default judgment, through the date of this Memorandum and the Order which shall accompany it.  Although the Debtor has not been irreparably harmed by the delay attendant to the disposition of the adversary proceeding, particularly as the Court notes that its Notice of Inactivity prompted the Motion for Default Judgment, the Debtor's creditors should not bear the legal costs associated with Vertec's Emergency Motion to Vacate Default Judgment.  Additionally, in view of the types of claims asserted by the Debtor and the defense asserted by Vertec, this Court further conditions the relief afforded Vertec on Vertec's assent to  participation in mediation. *See* MLBR Amended Standing Order 09-04.

## V. CONCLUSION

In accordance with the foregoing, the Court shall enter an order granting the Motion to Vacate and establishing deadlines for, among other things, the submission of a fee application by Debtor's counsel.

By the Court,

*Joan N. Feeney*

Joan N. Feeney
United States Bankruptcy Judge

Dated: February 6, 2012